# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01089-COA

**DEMARCUS VENTRELL TIMMONS A/K/A**        **APPELLANT**
**DEMAARCUS VENTRELL TIMMONS A/K/A**
**DEMARCUS TIMMONS**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/03/2014 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KEVIN DALE CAMP |
| | JARED KEITH TOMLINSON |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LISA L. BLOUNT |
| NATURE OF THE CASE: | CIVIL - POSTCONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | MOTION FOR POSTCONVICTION RELIEF DISMISSED |
| DISPOSITION: | AFFIRMED - 10/13/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., MAXWELL AND FAIR, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1. Demarcus Timmons appeals the summary dismissal of his postconviction-relief (PCR) motion. While he argues his guilty pleas to armed robbery, kidnapping, and conspiracy to commit armed robbery were involuntary, the record contradicts this. Instead, it shows the judge thoroughly advised Timmons of his constitutional rights, which Timmons waived. And Timmons was clearly informed of the nature of the charges and consequences of his pleading guilty.

¶2. We also reject his attack on the factual basis's adequacy. Not only did the judge recite the charging language of each count in Timmons's indictment, but the prosecutor also gave an extremely detailed proffer supporting the charged offenses—including the fact that Timmons used a gun during the robbery. Timmons agreed with this factual basis and also admitted he was guilty of each charge. So we find his pleas were factually supported. And we are not persuaded that Timmons's post-guilty-plea denial of using a firearm to rob the victim mandates we set aside his guilty pleas.

¶3. As to his ineffective-assistance-of-counsel claim, we find it is undercut by his waiver of his speedy-trial rights, his insufficiently pled *Strickland* challenge, and his earlier-admitted satisfaction with his attorney. We thus affirm the denial of his PCR claim.

## Facts and Procedural History

¶4. On November 28, 2011, Kimberly Lewis worked at Sand Dollar Lifestyles—a clothing store in the Renaissance shopping center in Ridgeland, Mississippi. When Lewis left work that day to deposit store proceeds, Timmons waited until she opened her car door, then he climbed inside and held a gun on her. He forced Lewis to drive to the Embassy Suites hotel, about a mile from the shopping center. Once there, Timmons stole the store's deposits and Lewis's phone. He also took her I.D. and car keys.

¶5. On April 19, 2012, the State charged Timmons and several others with armed robbery, kidnapping, and conspiracy to commit armed robbery. On September 17, 2012, Timmons pled guilty to all three charges. The judge sentenced him to serve thirty-two years, thirty

2

years, and five years, respectively. All sentences were ordered to run concurrently. Timmons later filed a PCR motion, challenging the voluntariness of his pleas, the factual basis, and his attorney's effectiveness. The circuit judge summarily dismissed the PCR motion, and Timmons appealed.

## Discussion

¶6. When considering the denial of a PCR motion, "we review the trial court's findings of fact for clear error." *Wilkerson v. State*, 89 So. 3d 610, 613 (¶7) (Miss. Ct. App. 2011). We review questions of law de novo. *Id.* The burden is on the PCR movant to show by a preponderance of the evidence he is entitled to relief. *Id*.

### I. Guilty Pleas

¶7. Timmons argues his guilty pleas were involuntary. He also suggests there was an insufficient factual basis for his pleas.

#### A. Voluntariness of Pleas

¶8. Before accepting a guilty plea, the trial judge "must determine that the plea is voluntarily and intelligently made[.]" URCCC 8.04(A)(3). A guilty plea binds the defendant when it is voluntary, knowing, and intelligent. *Hill v. State*, 60 So. 3d 824, 828 (¶11) (Miss. Ct. App. 2011). "To determine whether the plea is voluntarily and intelligently given, the trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea." *Dockery v. State*, 96 So. 3d 759, 763 (¶17) (Miss. Ct. App. 2012) (quoting *Burrough v. State*, 9 So. 3d 368, 373 (¶11) (Miss. Ct. App. 2012)). The

3

defendant must also be advised that a guilty plea waives various constitutional rights. *Hill*, 60 So. 3d at 828 (¶11). The most significant evidence of voluntariness of a plea is "[t]he thoroughness with which the defendant was interrogated by the lower court." *Id*. at (¶12).

¶9.     When a PCR petitioner, like Timmons, tries to back out of an already-entered guilty plea, "it is the petitioner, not the State, who bears the burden of proving by a preponderance of evidence that the guilty plea was involuntary." *Norris v. State*, 162 So. 3d 833, 837-38 (¶20) (Miss. Ct. App. 2014) (citing *House v. State*, 754 So. 2d 1147, 1152 (¶25) (Miss. 1999)); *see also* Miss. Code Ann. § 99-39-23(7) (Rev. 2015). If a trial judge deems a defendant's guilty pleas voluntary, we will only reverse if the judge's findings are clearly erroneous. *Dockery*, 96 So. 3d at 763 (¶17).

¶10.    Our review shows the judge thoroughly questioned Timmons during his plea hearing. When the judge quizzed him about his case, Timmons claimed he understood the nature of the charges. The judge also read the indictment—which contained all elements of armed robbery, kidnapping, and conspiracy to commit armed robbery. And Timmons insisted he understood each element. Timmons also maintained he and his lawyer had earlier discussed all facts and circumstances of the charges, including elements of the crimes and potential defenses. He admitted reading, signing, and understanding his guilty-plea petition. And he assured the judge it was true and correct. According to Timmons, no force, promises, or threats were used to secure his guilty pleas. The judge also advised him of the rights he was

waiving by pleading guilty,[1] informed him about potential sentences, and even made express findings about the voluntariness of his plea.

¶11. After review of the judge's exhaustive plea colloquy, we find nothing to show Timmons misunderstood the nature of the charges, the plea proceedings, or the rights he was giving up. Nor is there any hint he mistook the consequences of waiving trial and pleading guilty. So we agree with the trial judge that Timmons failed in his burden to prove his guilty pleas were involuntary and see no error in this ruling.

### B.     Factual Basis

¶12. In addition to voluntariness, there must also be an adequate factual basis to support a guilty plea. URCCC 8.04(A)(3). This is where Timmons focuses his main challenge. The record shows Timmons's indictment was read to him, and he agreed with the prosecutor's proffer, which included mention of Timmons's gun use during the robbery—an element of armed robbery. But as Timmons sees it, his postplea denial of gun exhibition renders his guilty pleas unsupported by an adequate factual basis. We disagree. Because Timmons denied his gun use only *after* his pleas had already been accepted and he had already been adjudicated guilty by the court, his denial does not undermine his binding guilty pleas.

### Factual Basis Generally

---

[1] The circuit judge informed Timmons that by pleading guilty he was waiving his rights to remain silent, to be tried by a jury, to confront witnesses against him, to present evidence and call witnesses on his behalf, to appeal the issue of his guilt, and to assert other constitutional-rights violations.

¶13. There are a variety of ways to establish a factual basis. They include "a statement of the prosecutor, the testimony of live witnesses, and prior proceedings, as well as an actual admission by the defendant." *Williams v. State*, 110 So. 3d 840, 843 (¶17) (Miss. Ct. App. 2013) (quoting *Turner v. State*, 864 So. 2d 288, 292 (¶17) (Miss. Ct. App. 2003) (citing *Corley v. State*, 585 So. 2d 765, 767 (Miss. 1991))). "And 'if sufficiently specific, an indictment or information can be used as the sole source of the factual basis for a guilty plea.'" *Id.* (quoting *Drake v. State,* 823 So. 2d 593, 594 (¶6) (Miss. Ct. App. 2002)). We look to the entire record when evaluating the factual basis. *Id.*

¶14. During the plea hearing, the State read all three counts of the indictment, each of which specifically pled all elements of the crimes. Timmons admitted his guilt on each count. And he agreed with the prosecutor's description of the plot Timmons hatched with several others to rob the store.

### 1. Timmons Agreed with the Prosecutor's Statement

¶15. According to the State, the conspiracy began as an inside job. Kinesha Rush, the comanager at Sand Dollar Lifestyles, knew sales volumes would be high after Thanksgiving Day. So she recruited her boyfriend, Antonio Wallace, and several others to help rob the store's comanager, Kimberly Lewis, when she left the store to deposit sales proceeds at a bank.

¶16. The next day, when Lewis left the store, Rush texted Antonio Wallace, who relayed this information to Reginald Wallace. This prompted Timmons to watch for Lewis as she

6

headed for her car. When Lewis opened her car door, Timmons opened the passenger door and got in. Timmons then "pointed a gun" at Lewis and forced her to drive to the Embassy Suites hotel. When she parked at the hotel, he robbed her of the deposit bags, as well as her phone, drivers license, and car keys. Timmons then fled to a getaway car, which Reginald Wallace had driven to the hotel.

¶17. The hotel's surveillance video led investigators to Kinesha Rush and Kimberly Gates. Both women were arrested and confessed to the robbery. Lewis was able to identify her kidnapper and robber, Timmons, from a photo lineup.

¶18. After hearing the prosecutor's summary, Timmons said he wanted to "explain some more facts." But he briefly conferred with his attorney and decided against doing so. The court asked Timmons if he had any disagreement with the factual basis. Timmons said: "*No, sir.*" (Emphasis added). Timmons admitted no promises had been made and he had not been forced or coerced into pleading guilty. The court pointedly asked him if he was "freely and voluntarily admitting [his] guilt to the crimes" he was pleading guilty to. And Timmons said, "Yes, sir." The judge followed up by asking, "Are you pleading guilty because you are guilty and for no other reason?" Again, Timmons said he was.

¶19. After a few more questions, the court emphasized to Timmons, "At this point, it's not too late to stop the hearing, but it will be if I accept your guilty plea . . . . I want to be certain you want to plead guilty. Do you want to plead guilty?" Timmons responded that he did. When asked if he had any question, Timmons said, "No, sir."

### 2. *Acceptance of Guilty Pleas and Adjudication of Guilt*

¶20.    As the hearing continued, the State informed the court that one of Timmons's codefendants was still awaiting trial, and the prosecutor wanted to lock down Timmons's testimony about additional robbery details.  But there was a question about when this should be done.  After some discussion, the State ultimately agreed with the court that the proper time to question Timmons would be after he had entered his guilty pleas.  So at this point, the court asked Timmons, "how do you plead" to Count One—armed robbery.  Timmons said, "I'm guilty sir."  Timmons also admitted his guilt to Counts Two and Three, the kidnapping and conspiracy counts.  The court then made explicit findings that the defendant's pleas were "freely, voluntarily, knowingly, and intelligently made and entered[.]"  And the judge further found there was an adequate "factual basis."  The judge "therefore accept[ed] the defendant's plea of guilty and adjudicate[d] him to be guilty of armed robbery under count one, kidnapping under count two, and conspiracy to commit armed robbery under count three."  The court directed that "a judgment of conviction will be entered."

### 3. *Post-Guilty-Plea Questioning*

¶21.    When the prosecutor's post-guilty-plea questioning of Timmons began, the court emphasized, "I would like to add [Timmons] has already pled guilty.  And you know I'm going to take it as a failure to accept responsibility if he starts testifying that he didn't do anything, because he has testified that he did and he has pled guilty."

¶22.    Under questioning from the State, Timmons claimed the day before the robbery,

8

Kinesa and a couple of folks came up with the robbery scheme. And the next day he "just went on with it[.]" He thought the victim, Kimberly Lewis, was involved too. Kinesa had told Timmons that Lewis was "a young white girl" who drove a "gray Eclipse." From this description, Timmons knew whom he should be looking for.

¶23. Timmons continued with his version of the robbery, which was quite similar to the State's with one material difference—he now claimed he did not use a gun. As he put it, he "had his hand up under his shirt," pretending to have a gun. After hearing this, the court explained: "[this denial] doesn't make any difference right now, because he has already pled guilty, and he has been adjudicated convicted of armed robbery, kidnapping[,] and conspiracy." The judge mentioned he would consider Timmons's "trying to back up on" the gun when he sentenced him. After further discussion between the court, the lawyers, and Timmons, the judge decided to go ahead and hear from the victim, Lewis.

#### 4.    The Victim's Testimony

¶24. Kimberly Lewis was sworn and testified that Timmons did use a gun. She remembered staring at Timmons "like he was crazy" when he jumped in her car and drew a pistol from his hoodie pocket. She watched him rack the slide back "on the top part of the gun," then obeyed his instructions to drive away from the store. As Lewis pulled out of the parking lot, Timmons held the gun on her with one hand, while he dug through her purse with the other. Timmons directed her to the Embassy Suites hotel. There, Timmons took the store's deposits, and Lewis's phone. She remembered the gun was "kind of boxy" with a

9

black "matte finish." The prosecutor mentioned that Lewis's description of the pistol matched that of a pistol recovered from Timmons's codefendant's room.

¶25. After Lewis testified, Timmons spoke up and apologized to the court for committing the robbery, pointing to his drug addiction as the motivating factor. The judge made clear that while he did not find Timmons gun denial credible, he believed Lewis's testimony about being robbed at gunpoint. The judge then recessed and sentenced Timmons at a later date.

### 5. Adequacy of the Factual Basis

¶26. For a trial judge to accept a guilty plea, "there must be an evidentiary foundation in the record 'sufficiently specific to allow the court to determine that the defendant's conduct was within the ambit of that defined as criminal.'" *Lott v. State*, 597 So. 2d 627, 628 (Miss. 1992). There is no legal requirement "that a defendant admit every aspect of a charge against him." *Gaskin v. State*, 618 So. 2d 103, 106 (Miss. 1993). Rather, a guilty plea will be considered valid if a defendant makes only a bare admission of guilt. So a judge may accept a guilty plea, even in the face of protestations of innocence, if the evidence against the defendant is sufficient to sustain the guilty plea. *See Reynolds v. State*, 521 So. 2d 914, 917 (Miss. 1988). We thus look to the whole record for "an independent evidentiary suggestion of guilt" and to determine if the factual basis is adequate. *Id.*

¶27. In reviewing the evidence, we emphasize the only fact or element Timmons now challenges is his use of a gun. And since use of a firearm is not an element of either

kidnapping[2] or conspiracy to commit armed robbery,[3] his challenges to both charges clearly lack merit.

¶28. But the armed-robbery count differs from the other two since it does require proof of "exhibiting a deadly weapon." *See* Miss. Code Ann. § 97-3-79 (Rev. 2014); *Williams v. State*, 317 So. 2d 425, 427 (Miss. 1975) (Armed robbery is the taking of personal property of another from his presence and against his will by violence or by putting him in fear of immediate injury *by exhibiting a deadly weapon.*). So we must decide if there is an "independent evidentiary suggestion" that Timmons used a gun to rob Lewis. We find there is.

¶29. During the plea colloquy, Timmons admitted everything in his plea petition was true. The petition explained he was guilty of armed robbery "by the exhibition of a deadly weapon." The armed-robbery count was also read to Timmons. And the judge pointed out an element of the crime was "exhibition of a deadly weapon, to wit, a pistol." Timmons told the court he understood that element. And perhaps most important, Timmons agreed with the State's detailed recitation, which included Timmons's use of a gun during the robbery. He also admitted under oath he was guilty of all charges.

---

[2] To prove kidnapping the state must show the defendant forcibly seized and confined or inveigled or kidnapped another, with the intent to cause such a person either to be secretly confined, or to be deprived of liberty or in any way held to service against her will. Miss. Code Ann. § 97-3-53 (Rev. 2014).

[3] One way to establish a conspiracy is by an agreement between two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully. Miss. Code Ann. § 97-1-1 (Rev. 2014); *Griffin v. State*, 480 So. 2d 1124, 1126 (Miss. 1985).

¶30. Thus, reading the record as a whole, we find his guilty pleas were sufficiently supported. We also find his later post-guilty-plea denial was just as the judge told him—"too late." Timmons did not deny exhibiting a pistol before the judge adjudicated him guilty. And at no time afterwards did he ever try to withdraw any of his guilty pleas. We affirm the denial of his postconviction challenge to his guilty pleas.

## II. Ineffective Assistance of Counsel

¶31. Timmons next argues his counsel was constitutionally deficient. From the outset, we reject his claim that his counsel was ineffective by not raising a speedy-trial violation. Timmons pled guilty, and when "a defendant voluntarily pleads guilty to an offense, he waives all non-jurisdictional rights incident to trial, including the constitutional right to a speedy trial." *Hill*, 60 So. 3d at 827 (¶6) (citing *Anderson v. State*, 577 So. 2d 390, 391-92 (Miss. 1991)). Since his plea was voluntary, this issue is waived. *See id*. at (¶7).[4]

¶32. Timmons also suggests his lawyer was ineffective for not investigating witnesses to support his claim he did not have a gun. To establish ineffective assistance of counsel, Timmons must demonstrate: (1) his attorney's performance was deficient, and (2) this deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For an attorney's performance to be deficient, it must fail to meet "an objective standard of reasonableness." *Id*. at 688. And there is generally a strong presumption that counsel's

---

[4] This waiver aside, his attorney *did* file a motion for a speedy trial on June 8, 2012. The arrest warrant and indictment were dated April 19, 2012. And Timmons pled guilty on September 17, 2012, his scheduled trial date. So there was only a five-month lapse.

performance falls within the range of reasonable professional assistance. *Id*. at 689. To overcome this presumption, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Madden v. State*, 991 So. 2d 1231, 1236-37 (¶23) (Miss. Ct. App. 2008) (citing *Strickland*, 466 U.S. at 694). When a guilty plea has been entered, "the second prong of prejudice is shown by proving that the ineffective assistance of counsel affected the outcome of the plea process." *Wilson v. State*, 21 So. 3d 572, 578 (¶16) (Miss. 2009).

¶33. A defense lawyer's failure "to interview potential witnesses and make an independent investigation of the facts and circumstances of a case" will not, by itself, give rise to ineffective counsel. *Oliver v. State*, 20 So. 3d 16, 24 (¶23) (Miss. Ct. App. 2009). "For an attorney's 'failure to investigate' to be deemed 'ineffective assistance of counsel, the defendant must state with particularity what the investigation would have revealed and how it would have altered the outcome.'" *Id*. So Timmons had to both plead and show he would not have entered his guilty pleas but for his attorney's alleged failure. *Id*. But Timmons allegations lacked the requisite "specificity and detail" that his lawyer's performance was deficient and prejudicial. *Brooks v. State*, 573 So. 2d 1350, 1354 (Miss. 1990). Timmons has not identified the witnesses his lawyer should have talked to. Nor has he particularly pled what they would have said. Thus, he fails on both prongs.

¶34. Furthermore, during his plea hearing, Timmons insisted he was satisfied with his

lawyer's services and advice.[5]  When asked by the judge if he had any complaints about his attorney, Timmons said, "No, sir."  We have long held that "[s]olemn declarations in open court carry a strong presumption of verity."  *Mitchener v. State*, 964 So. 2d 1188, 1194 (¶15) (Miss. Ct. App. 2007).  And we find no error in the trial judge implicitly finding Timmons had not overcome this presumption.

### III.    Evidentiary Hearing

¶35.    Timmons also claims the circuit judge wrongly denied him an evidentiary hearing on his PCR motion.  But trial judges may summarily dismiss a PCR motion where "it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief[.]"  Miss. Code Ann. § 99-39-11(2) (Rev. 2015); *see also State v. Santiago*, 773 So. 2d 921, 923-24 (¶11) (Miss. 2000).  Because Timmons has not shown "a claim procedurally alive substantially showing the denial of a state or federal right," no hearing was necessary.  *Robinson v. State*, 19 So. 3d 140, 142 (¶6) (Miss. Ct. App. 2009).  The judge reviewed the PCR motion, guilty-plea transcript, sentencing-hearing transcript, and criminal file before denying Timmons's PCR motion.  We have done the same, and we too find Timmons has not shown a viable PCR claim.  We thus affirm the summary dismissal of his PCR motion.

¶36.  **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POSTCONVICTION RELIEF IS AFFIRMED.**

---

[5] Timmons also acknowledged in his plea petition that his "attorneys have counseled and assisted me, and I am satisfied with the advice and help she has given me."

14

**ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR.**